Our final case for oral argument this morning is case number 25-1316 Strong v. Dillett. Good morning, Mr. Lamar. Good morning, Your Honor. May it please the court, my name is Viagra Lamar and I represent Josiah Strong, the appellant in this case. Josiah Strong respectfully asked this court to reverse the district's decision for two reasons. First, the district court failed to apply the federal accrual rule, and second, even if the court believed the accrual began earlier, equitable tolling and discovery applies and operates to save this claim. Your Honor, this appeal turns on a single, narrow question. When did Josiah Strong's Title IX claim accrue? In order to determine that a claim has expired, we must first pinpoint when it began. Mr. Lamar, before you go too far down there, based on your introductory comments, I think you agree that this is a federal accrual. The district court said state. It was argued below that it's a state rule, but it sounds like you now agree this is a federal rule. Yes, Your Honor. We agree that the federal accrual doctrine does apply. The district court nor the defendants have pinpointed a specific date under when that would have occurred. They vaguely allege it began sometime in 2015 or 2016 when Josiah was 14 and believed he was in a consensual, romantic relationship with his teacher, and now understands that he had been abused sexually over 20 times. At that time, she wasn't his teacher, though, correct? She was his supervisor in an employment context, correct? That is correct, Your Honor. Does that impact anything in terms of the analysis? No, it doesn't. It does not because under the Title IX, he was a student. He was a person that was in a school setting, so we believe the Title IX still applies in that setting. Title IX does not arise from the sexual acts themselves, but instead it arises from the school's deliberate indifference and inaction to known sexual harassment. Josiah did not even realize that he had been abused until 2023 after years of therapy helped him understand that what he experienced was exploitation. He then learned in 2024 that the school had been warned and they had received notice in a secret meeting in 2015 and chose to do nothing. To my first point, the district court applied the wrong accrual rule. The district court failed to apply the correct federal accrual rule, and that was error. Accrual of a Title IX claim is governed by federal common law, not state doctrine. Are you arguing that the court got the test for it wrong or applied the correct test incorrectly? Because I know the court said it was a state accrual rule, but I think it cited and was relying on what the federal accrual rule was, is. Well, Your Honor, we believe that the federal accrual rule is what is to be utilized and that in this instance, the court incorrectly cited to a federal accrual rule in C.S. v. Madison that I will go into that was not consistent with the precedent of this court. And to my point, the only thing that we borrow from the state doctrine is the statute of limitations, not the doctrine itself. This court has long held and stated explicitly that federal law determines when a 1983 claim accrues. But the limitations, statute of limitations, is borrowed from state law. That was in the Men of Bureau Equity Court v. Village of Oak Lawn. That was back in 2018. In addition to misinterpreting the proper Title IX federal accrual rule, the district court erred in four major ways. Number one, they conflated knowledge of the sexual conduct with knowledge of abuse. Josiah readily admits that he had sexual conduct with his teacher over 20 times and about five or six times even after the school had noticed. But the difference between admitting that you had sexual conduct and knowing that you were abused is completely two different things, especially with a 14-year-old minor. Number two, the district court ignored that institutional liability principles apply. This case is not about Dillard, who was the alleged perpetrator in this matter. The defendant here is the school. Institutional liability governs the deliberate indifference that we are alleging, the sexual discrimination, and the inaction that the school had. So even if he has knowledge that he has been sexually involved with the perpetrator, that has nothing to do with the evaluation as we look at institutional liability. Number three, the district court improperly imputed the mother's undisclosed knowledge to the minor. We alleged in our complaint that in December of 2015, there was a secret meeting. Josiah, who is the only plaintiff, was not present for that meeting. His mother was, along with another parent who witnessed the inappropriate sexual conduct. In response to that, the mother never communicated this information that there was a meeting to her 14-year-old son. There's no factual basis at all to determine that Josiah ever had knowledge that the school had noticed and that they failed to act on this. The district court erroneously concluded that simply because a third party had noticed, that somehow that imputes to the plaintiff in this case. So we believe that was an error. Now going to the precedent that the district court utilized in this case, turning to its reliance on CS versus Madison Metropolitan School District. The district court alleged that the federal accrual doctrine begins when a school has notice of misconduct. Well, if we turn to CS versus Madison Metropolitan School District, it nowhere states that. The word accrue or statute of limitations is not even found in that case. That is not a statute of limitations case. It does not speak to when a Title IX claim accrues. The cited language addresses when a school's duty to respond arises, not when a plaintiff making claims of institutional liability standards becomes time barred. So that case was just completely inappropriate. Next, no Seventh Circuit precedent holds that limitations run from the moment that the school receives notice of misconduct. That has never been a standard that this court has ever stated. In fact, just one year ago, in Seat versus Nicolet Union High School District, in August of last year, this court referenced the Supreme Court decision in McDonough versus Smith, 588 U.S. 109, where it articulated that while state law supplies the statute of limitations, federal law governs the accrual of 1983 and 1985 claims. This court went on to explain that in such claims accrue when a plaintiff knows the fact and the cause of an injury. That is explicitly what was alleged in this case. We allege that on March 30th, 2023, Josiah, through counseling and therapy, learned of his injury. And then on page eight of our complaint, on May 14th, 2024, he learned one of the factors that caused that injury, which was the institution's deliberate indifference and inaction to the notice that they had of this teacher's conduct. Mr. Lamar, you are into your rebuttal time. If you want to save it, if you want to keep going, go ahead. But if you want to save it. I will save it. Thank you, Your Honor. Mr. Waldeck, good morning. Good morning, Your Honors. May it please the Court. Peter Waldeck here on behalf of the Pele, St. Peter, Emanuel Lutheran Church and School. We are asking that the Court affirm the dismissal of this claim. When we get down to it, whether we're talking about accrual or the discovery rule, I'm not sure that that distinction matters. It does matter which law we apply? Federal or state? So why don't you just take us through the decision tree? Because the one that the district court used was not exactly right. Well, they cited the C.S. Madison talking about accrual. And the Court said the accrual begins when the school has knowledge and then fails to act. That's what the C.S. case said? Or that's what the district court here said C.S. says? Let's just set aside what the district court said. This is de novo review. We can completely ignore what the district court said, and let's do that here. Start from the beginning. What's the applicable statute of limitations? What is the applicable accrual rule? What is the applicable discovery rule? And what are the applicable tolling rules? That's your decision tree. Go. Thank you, Your Honor. The applicable statute of limitations is Wisconsin Statute 839.53. Because this predates the change in Wisconsin law?  And that statute, in fact, is not the omnibus personal injury statute, even back in the day when this Court started using it as the omnibus personal injury statute. It's the catch-all statute, is it not? It is. Right. So there's a question about whether we've been misapplying that statute of limitations since the 1970s, but I fought that battle and lost, so let's move on. Okay. We're going to keep sticking with that because this predates the change. Okay. Okay. Step two. Step two, I believe you were asking. Accrual rule. Accrual rule. Federal or state? Well, the way it works is the federal accrual rule. And what is that? Well, this gets to my original point. I think it accrues when the plaintiff knows or with reasonable diligence should know, which I probably inartfully stated it early because the rules do matter. Right. And the CS case speaks to that or doesn't speak to that? Well, it doesn't speak. I would agree. I don't know that they talk about accrual. Wrong case. Wrong case. There are other cases saying what you just said. And the CS Madison case does, in fact, state that the claim begins to run when the plaintiff knew or should have known. Okay. If I could interject. Yes, Your Honor. Knew or should have known what for a Title IX case? Well, that's a very good point. So the underlying act here is obviously the sexual act. The Title IX claim is going to be the indifference or the failure of the school to act on that. Now, it's hard to separate these two in this case because they're both kind of working together at the same time. But let's just deal with the action or the inaction of the school. What we know from the complaint and the amended complaint is we know that the plaintiff knew the identity of Ms. Dillard. We knew that she was an employee. We knew she was an employee of our school. We know that she was inappropriately allowing him to drive her car, give him gifts, have sexual interactions with him. He, in fact, bragged about that, this relationship. This is in the pleadings, in the complaint. We know that the dad came to him when he found text messages and he confessed. We know that Ms. Dillard came to the house and pled, please don't tell anybody. And, of course, rightfully so, they did. And this was before the 2015 explosion that surfaced this relationship at the school? Correct. Okay. This is all, and it's all, I'm taking this all from the pleadings, obviously. He knew that Ms. Dillard was arrested, found guilty, and served two years. And when did that happen? That happened in. And is this in the complaint? It's in the complaint. Amended complaint paragraphs 46 and 47. Original complaint 45 and 46. I believe all this was in early 2016 when Child Protective Services were called the investigation. So all this was there. Now, you can take it. He was being treated as a crime victim effective in early 2016 or 2015?  Thereabouts?  Okay. And so. And he doesn't file until 2024? He doesn't. And it's understandable. I mean, take away the fact that he. Okay, let's then maybe skip to tolling since we've established likely a cruel date. Fair enough. When he's being treated as a crime victim. Fair enough. Number one, I'd be remiss if I didn't mention that. I believe these arguments are waived, but that's boring and self-evident, so I won't go into it. With the tolling, if we look at whether they're talking about equitable tolling or equitable stop, what matters? But with equitable tolling, you need to have the Hester factors here, which they don't have. There's the six Hester factors, none of which apply here. And in essence, the sum total is my client would have had to actively try to commit a fraud or otherwise dissuade him from pursuing a claim or believing he didn't have a claim. And those Hester factors, that's a state law doctrine? Correct. Okay. And the case that says we apply state law tolling rules is what? I've done my best to answer your questions. I don't. I'm at a loss here. I know I'm reconstructing the decision tree here, but there is a case that says we apply the Wisconsin tolling rules? I believe there is. I'm looking through the equitable cases under the federal case, and again. In the Title IX context, or is it borrowed from some other context? I apologize, Your Honor. I just don't know if they're Title IX cases in the notes I have here, but we have the cases that are in front of you, and I guess I wasn't prepared to answer your decision tree at this point, so I apologize. But in any event, whether it's equitable tolling or equitable estoppel, regardless, my client would have had to actively have done something to prevent that. The other line of cases we see is this one of mutual mistake or nobody could have known. We look at the cases where an individual was in a coma. We look at the cases where the woman with the furnace went to multiple doctors and said, hey, I think it's my furnace, and they said, no, it couldn't have been. And that's where the court says, you know, that's at least a fact question is whether or not you were diligent in pursuing your claim. So what we have here is simply the plaintiff's inability or decision not to ask the question, whether or not he knew of my client's inaction or indifference to the abuse. It was known, and likely known by him, but if it wasn't known, it becomes an objective test when the facts and the reasonable inferences are undisputed. And these facts were taken from their complaint. All he needed to do was ask the question. He could have asked his mom, did the school do anything? He could have asked the school. He could have looked at the court records. He could have gone to an attorney. He could have done any number of things. The facts were there to be known. What about the statutory tolling for his minority? Well, it would then go to the age of majority plus two years. And when did he turn 18? He would have turned 18 in 2019, putting sometime in 2021 when they needed to bring the claim. And it's whichever is longer, right? Correct. And I did the math, and I'm not great at math, but any way you parse this out, six-year statute of limitations, three-year statute of limitations, It's sometime in 2021.  Basically, which is why a specific date is not pinpointed anywhere. Correct. It's untimely under any of the analysis. And so, obviously, this is the argument. We would then have indefinite statute of limitations always if people could just be willfully ignorant of the claim, not ask questions and just say, I don't know. Wouldn't the question on a parole be for the Title IX, though, that when your client knew or reasonably should have known that, when the plaintiff knew or reasonably should have known that your client was on notice of the misconduct and didn't do anything about it while it was ongoing? Mm-hmm. So wouldn't your client have to know that, or should have known, have reason to know, that during the course of the conduct, it was ongoing and they didn't do anything about it? Correct. So if he found out about it after the effect, once she was arrested, the school clearly knew about the misconduct, but there's that second piece for deliberate indifference that he had to have reason to know that they knew about it before then and did nothing. And the mom was in the meeting and knew and requested the formal investigation. And that's the question about imputing the knowledge to him. But it's not imputed, because I'm not asking the court to impute that knowledge. What I'm saying is reasonable diligence. All he needed to do was ask the question. Isn't that an issue for discovery, though? Because we're on a B6, and we rarely decide limitations, disputes on a motion to dismiss. And I'm looking at paragraph 43. Josiah had no knowledge of the initial reports of Dilett's improper conduct. And it goes on. You know, there are reasons why the mom might not have shared the meeting. Maybe she was embarrassed. Maybe there was shame. Maybe there was a taboo about sex. So perhaps the mom didn't share it, and it wasn't until the dad, you know, busted him on his cell phone that it all came out. But at this procedural juncture, I mean, I could see a lot of depositions of the mom, of Josiah. Is this really reasonable? Because I see that the district court here actually did kind of conflate the mom and Josiah. And it points in the opinion he talks about they. Well, mom is not in this case. We're talking about Josiah alone and what he knew, and we must take these allegations as true. Correct? I'm assuming the mom didn't share this information. Yeah. Reasonable diligence. All he needed to do was inquire. It was knowable and easily knowable. But what would he have inquired about if he didn't know that the mom was meeting with the school? He would have asked. He knew she was an employee of the school. He knew that that was the employer. He knew the relationship there. All he needed to do was inquire to see did the school do anything. Otherwise, we can all walk around willfully ignorant and say, I didn't know you manufactured the product that injured me until 20 years later when I was reading a magazine, and I realized, and that's when I decided to sue you. I didn't know your farm was the one that didn't wash the vegetables I ate. I sat around and had terrible liver failure and went to the hospital and never asked a question until 50 years later. Counsel, I get your point. I get your point. My point is a procedural point about Mr. Strong very well may lose at summary judgment, right, once it comes out. But he was 14, 15, and you're saying he should have asked. By the time he reached the age of majority, he had two years to ask questions, and he chose not to. We don't live in the world of Socrates or Nietzsche where all facts are relative or we know nothing. We live in a world where we have facts and the law applies to them. These were knowable facts, relatively ascertainable by him. All he needed to do was ask the question. They were there. It wasn't some esoteric discovery that he needed to conduct. It was self-evident. He knew the school. He knew the employer. He knew the employee. He knew what happened. All he needed to do was ask. You could ask for that at a deposition, can't you? I could ask it or I could ask Your Honors to say that it now becomes an objective test because it's a reasonable inference under the law. It would be unreasonable to say he shouldn't have asked those questions if he wants to maintain a cause of action. He's given the age of majority plus two years. The legislature has found that that's sufficient time and failed to act within that time period. Otherwise, we invite an open door to people claiming I just didn't know and I didn't ask any questions. They're not coming here saying we asked questions. But in the Title IX context, counsel brought up a case, SELAC, which is a 1983 case. Are you familiar with this case? I'm not. Okay. You ought to read it because it's a 1983 case, and in that case, we tied a cruel to both knowing the fact and the cause of an injury. And in that case, it was 1983 against a school board, the school's failure to take action and investigate. And in that case, one of the plaintiffs, the plaintiff lost on other grounds. It was a Menal claim, but the court found the plaintiff's claim timely under the accrual rule that essentially the plaintiff is asking for here. Well, in that case, maybe it's positive. I don't know that it's in the briefing unit, but I'm not familiar with it as I sit here. What I do know is that we have repressed memory cases. We have coma cases. We have somebody being knocked out cases. And the court in those situations can find, hey, there's a reason not to know. But when the facts are known or knowable and they do nothing to inquire, it is then unreasonable. And it's not a reasonable inference to say, well, they just didn't know, so the statute continues. At some point, the rubber needs to hit the road on this. He knew he was given until the age of majority in two years to simply ask the question and didn't do it. Thank you, Mr. Waldo. Thank you. Mr. Lamar, you have a few minutes left for a rebuttal. Thank you, Your Honor. I will quickly just go to the court's holding again on C.S. v. Madison. It appears that both sides agree that this is not the correct standard that was rendered in the district court's opinion. It is not a statute of limitations case. So, again, just on that basis alone, we believe that that doctrine or that case was not relevant for this matter. We have cited a string, as the court has acknowledged, through just last year's C.S. v. Nicollet Union High School District. They have said this repeatedly. I mean, I can go through almost 20-plus years of doctrine of Seventh Circuit Court where they've always stated that claims accrue when a plaintiff knows the fact and the cause of his injury. It now appears that the defendants in this matter also agree. So now we turn to the fact basis. As the court, as we stated before, there's nothing in our complaint, and we must apply this based off of Iqbal, that we have alleged that he did not know anything until the filing of until May, until 2023, and then also the cause of his injury until 2024. So that is what the court should assume. And, again, we would expect that the defendants get to discovery, and they contest those facts. There's no precedent whatsoever that imputes a third party's knowledge, his mother. I want to also go back to the complaint. They alleged that in our complaint that he knew that there was a criminal investigation. I mean, he knew that she was convicted. Our complaint doesn't state that. It states the facts that, under Paragraph 44, that 45, that Ms. Dillick pleaded guilty to two felony charges of sexual assault. It also, in the Paragraph 46, acknowledges that she was sentenced to two years in prison and three years of extended supervision. There's nowhere that it imputes that knowledge to Josiah. Those are just facts that were alleged in this case. So, again, with time, only a few seconds left, we would— He's the victim of the crime. He certainly knew of the prosecution. That's the only plausible inference from that. Yes, Your Honor. He knows of a prosecution. He's 14 years old. That doesn't mean he even understands what a criminal justice system is or that it was improper for an adult to even have sex with a 14-year-old. There's no evidence that shows that that was his knowledge or that he knew anything was wrong. He thought he was in a consensual, romantic relationship, and that is what this Second Amendment complaint alleges. Thanks, Your Honor. With that, we ask the court to reverse the district court's decision. Thank you. Thank you, Mr. Lamar. Thanks to both sides. The court will take the case under advisement, and our oral arguments for today are done.